# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-116 (MTT) |
| YONG K. KIM d/b/a WING'S CAFE, LLC, | ) |
| Defendant. | ) |

## ORDER

Plaintiff J&J Sports Productions, Inc. has moved for summary judgment against Defendant Yong K. Kim, d/b/a Wing's Cafe, LLC. Doc. 9. The Plaintiff alleges that the Defendant individually violated sections of the Federal Communications Act and the Cable and Television Consumer Protection and Competition Act (collectively, "the Acts"), specifically 47 U.S.C. § 553 and § 605. Doc. 5. For the following reasons, that motion (Doc. 9) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

This case arises out of the September 13, 2014 broadcast of "Mayhem" Floyd Mayweather, Jr. v. Marcos Rene Maidana, II – WBC World Lightweight Championship Fight Program at Wing's Cafe, a bar then owned and operated by Wing's Cafe, LLC, a Georgia limited liability company. Docs. 9-2; 11-1. Wing's Cafe was open to the public with a maximum occupancy of ninety-nine people. Doc. 9-3 at 2. Wing's Cafe, LLC has

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

since been dissolved. Doc. 11-1. Defendant Yong K. Kim is the former sole LLC member and manager of Wing's Cafe. Docs. 11-1; 13-1 at 22:13-23:8.

On the night of September 13, 2014, the Defendant allowed a promoter, George Henley, to broadcast the Program in Wing's Cafe. Doc. 9-6 at 13:9-20. Henley brought a residential television box to Wing's Cafe and used the device to broadcast the Program on three of the televisions in Wing's Cafe. Docs. 9-1 ¶ 8; 9-6 at 15:4-13. It is unclear whether Henley used a cable box or satellite device to broadcast the Program. Doc. 9-6 at 16:1-5. The Defendant charged a $10.00 cover for each patron to enter Wing's Cafe and allowed Henley to keep the money, and the Defendant kept the profits made off of the food and drinks sold. Docs. 9-1 ¶¶ 4, 7; 13-1 at 13:18-20. The Defendant was "in and out" of Wing's Cafe the night the Program was broadcast. Docs. 9-3 at 3; 9-6 at 16.

The Plaintiff is in the business of licensing commercial exhibitions of pay-per-view closed-circuit events. Docs. 9-2; 9-5. On September 13, 2014, the Plaintiff was the only official licensor of the Program for commercial establishments nationwide. Doc. 9-2. Accordingly, commercial establishments in Georgia were required to obtain a sublicense from the Plaintiff to broadcast the Program. *Id.* The sublicense fee to broadcast the Program depended on the commercial establishment's occupancy capacity. Doc. 9-5. If the capacity was between one and 100 people, as was the capacity of Wing's Cafe, then the sublicense rate for the Program was $2,200. Docs. 9-3 at 2; 9-4; 9-5. Neither the Defendant nor Henley paid the $2,200 rate to the Plaintiff before broadcasting the Program. Doc. 9-6 at 20:3-11.

On April 10, 2018, the Plaintiff filed a complaint alleging that the Defendant, d/b/a Wing's Cafe, LLC, violated the Acts, specifically 47 U.S.C. § 553 and § 605.[2] Doc. 1. The Plaintiff alleges that the Defendant individually violated both § 553 and § 605 by "us[ing] unlawful means to receive the cable signal required to exhibit the Program." Doc. 5 ¶¶ 12, 22. The Plaintiff now brings this motion for summary judgment. Doc. 9.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.' In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)) (other citation omitted). "Only when that burden has been met does the burden shift to

---

[2] As a preliminary matter, the Plaintiff did not bring these claims outside the statute of limitations. The Federal Communications Act and the Cable and Television Consumer Protection and Competition Act do not provide a statute of limitations for actions under 47 U.S.C. § 553 and § 605. "Where a federal statute does not contain a limitations period courts should look to the most analogous state statute of limitations." *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)). However, "it is the duty of federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 367 (1977). O.C.G.A. § 46-5-2 is substantially similar in substance and form to 42 U.S.C. § 553 and § 605, and it "is not at odds with the purpose or operation" of the Acts. *DirecTV, Inc. v. Wright*, 350 F. Supp. 2d 1048, 1054 (N.D. Ga. 2004) (citing *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)). O.C.G.A. § 46-5-2 has a statute of limitations of four years for the theft of telecommunication services and will be applied here. O.C.G.A. §§ 9-3-31, 9-3-32.

the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In determining whether a genuine dispute of material fact exists, the Court must avoid weighing conflicting evidence or making credibility determinations. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

### III. DISCUSSION

The Plaintiff alleges that the Defendant violated both § 553 and § 605. Doc. 5. Section 605 makes it unlawful to assist in intercepting a satellite broadcast, and § 553 makes it unlawful to assist in intercepting a cable broadcast. *J&J Sports Prods., Inc. v. Thang*, 2018 WL 623497, at *4 n.5 (E.D. Cal. 2018) (citing 47 U.S.C. §§ 553, 605).

The Defendant does not deny that the broadcast of the Program was unlawful, but he appears to argue that he is not liable for the violation because Wing's Cafe was owned and operated by Wing's Cafe, LLC. *See generally* Docs. 11; 11-1. However, the Plaintiff does not seek to hold the Defendant liable for Wing's Cafe, LLC's violation. *See generally* Doc. 5. Rather, the Plaintiff contends that the undisputed facts establish that the Defendant was the actual manager of Wing's Cafe and personally committed

4

the violations by working with Henley to show the Program. Doc. 9-6 at 16:10-16, 19:16-20. The Court agrees.

The Plaintiff argues that it "does not really matter" whether the Defendant intercepted the broadcast via cable or satellite "as it is clear that Defendant Kim violated both §§ 553 and 605," and because those are strict liability statutes, the Plaintiff "only needs to show that the Program was shown in Defendant's establishment without [the Plaintiff's] authorization." Doc. 9-7 at 3-4 (citing *Joe Hand Promotions, Inc. v. Moctezuma Club, Inc.*, 2012 WL 2358254, at *2 (N.D. Tex. 2012) (holding that the plaintiff could only recover statutory damages under one statute when the plaintiff alleged violations of both statutes), *abrogated on other grounds by J&J Sports Prods., Inc. v. Mandell Family Ventures, LLC.* 751 F.3d 346, 348 (5th Cir. 2014)). The Plaintiff argues that to establish a violation of both § 553 and § 605, it must only prove that "(1) the Program was intercepted, (2) the Defendant did not pay for the right to receive the transmission, and (3) that the Defendant displayed the Program to patrons of his commercial establishment." Doc. 9-7 at 3 (citing *J&J Sports Prods., Inc. v. Just Fam, LLC*, 2010 WL 2640078, at *2 (N.D. Ga. 2010)).

It is undisputed that there was an unlawful interception: (1) the Plaintiff had exclusive commercial distribution rights to the Program; (2) the Defendant did not have authorization to show the Program at Wing's Cafe through its commercial satellite service; and (3) Henley "ordered the fight on his home account and then brought his own box from home and hooked it up to the equipment at Wing's Cafe" and showed it to patrons. Doc. 9-6 at 16:1-5, 20:3-11, 22:4-6. But "[d]espite the broad phrasing of section 605 (which dates back to 1934), it is not coextensive with section 553." *J&J*

5

*Sports Prods., Inc. v. Manzano*, 2008 WL 454962, at *2 (N.D. Cal. 2008) (citing *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996)).  "A defendant cannot violate both statutes by one 'act of interception,' but rather can only violate one or the other, depending on the type of broadcast involved." *Thang*, 2018 WL 623497, at *4 n.3 (citation omitted). Although it is undisputed that the showing of the Program was unlawful, the Plaintiff has not provided any evidence that the Defendant or Henley received the Program by satellite within the meaning of § 605 or by cable within the meaning of § 553.  Doc. 9-6 at 20:3-5.  Accordingly, the Plaintiff has established that (1) the Program was intercepted, (2) the Defendant was not authorized to receive the transmission, and (3) the Defendant displayed the Program to patrons of his commercial establishment, and thus, the Plaintiff's motion for summary judgment regarding the Defendant's violation is **GRANTED** to that extent.  Its motion for summary judgment regarding the Defendant's violation of both § 553 and § 605 is **DENIED**.

The Plaintiff also requests statutory and enhanced damages for the Defendant's violation.  Doc. 9-7 at 4-5.  Section 553 allows courts to award statutory damages between $250 and $10,000 to the Plaintiff, and § 605 allows courts to award statutory damages between $1,000 and $10,000.  47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i)(II). Because the Court cannot say as a matter of law whether the Defendant violated § 553 or § 605, the Court cannot determine statutory damages as a matter of law.

In cases where a court finds that the violator acted "willfully" and for purposes of direct or indirect commercial advantage, § 553 allows courts to award enhanced damages up to $50,000, and § 605 allows courts to award enhanced damages up to $100,000.  47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(i)(II).  The Defendant stated that he

6

did not know until after he was served with the Plaintiff's complaint that Henley did not have authorization from and did not pay the Plaintiff to show the Program at Wing's Cafe.[3]  Doc. 9-6 at 15:4-14.  Thus, the Court cannot say as a matter of law whether the Plaintiff is entitled to enhanced damages.  Accordingly, the Plaintiff's motion for summary judgment regarding damages is **DENIED**.

## IV.  CONCLUSION

The Plaintiff has shown that the Defendant committed a violation, but the Court cannot say as a matter of law that Henley violated § 553 or § 605.  Thus, the Court cannot award statutory or enhanced damages under either statute.  Accordingly, the Plaintiff's motion for summary judgment (Doc. 9) is **GRANTED in part** and **DENIED in part**.

**SO ORDERED,** this 3rd day of April, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

[3] Section 553(c)(3)(C) and Section 605(e)(3)(C)(iii) allow courts to reduce the award of damages to $100 and $250, respectively, if it finds that the violator "was not aware and had no reason to believe that his acts constituted a violation of this section."  47 U.S.C. §§ 553(c)(3)(C), 605(e)(3)(C)(iii).